Hon. PIERRE ADOLPHE ROST,
Hon. GEORGE ROGERS KING, } *Associate Justices.*
Hon. THOMAS SLIDELL,

## HELLWIG *v.* WEST and Wife.

The incapacity of married women to contract is not universal and absolute. The limitations imposed on their capacity to contract, for the maintenance of the marital power or for their protection against its abuse, must be construed strictly. In all cases to which they do not extend, the capacity of women is not affected by marriage.

The plea of want of authorization will not avail a married woman, where its effect would be to enable her to commit a fraud. For the same reason, in all obligations arising from quasi-contracts, offences and quasi-offences, the wife is bound without authorization.

APPEAL from the District Court of the First District, *Buchanan*, J. *Durant*, for the plaintiff. *C. Janin*, for the appellant. On the first hearing of this case, the following opinion of the court was pronounced by

ROST, J. The plaintiff, a skilful and diligent gardener, was employed in that capacity by *Mr. West*, with the assent and approval of his wife, at the rate of $25 per month, and took charge of a garden attached to the suburban residence of his employer. *West* was at the time engaged in business in New Orleans, and his wife had the exclusive management of the place, and of all persons employed on it. She furnished the supplies, received the profits, which amounted to five or six dollars per day, and represented herself to the persons she hired as the absolute mistress of the plantation. After the plaintiff had been working nearly two years *West* failed, and the plaintiff brought suit against the assignee of the creditors and *Mrs. West*, for the balance due him, with privilege on their moveable effects, under art. 3158 of the Civil

Code. The court of the first instance gave judgment against them *in solido*, with the privilege claimed, and *Mrs. West* has appealed.

The defence set up takes it for granted that the incapacity of married women to bind themselves without authorization, is universal and absolute. We conceive the law to be otherwise. Women are not rendered incapable on account of their sex. The capacity of single women to contract is the same as that of men. When they marry the laws, which limit their capacity in certain cases, have for their object the maintenance of the marital power on the one hand, and the protection of women against the abuse of that power on the other. These limitations must be construed strictly, and, in all cases to which they do not extend, the capacity of women is not affected by marriage.

There are entire classes of obligations in which the plea of want of authorization cannot avail married women, because it would enable them to commit fraud. Ulpian, commenting upon the *Senatusconsultum Velleianum*, in which most of the laws establishing the disabilities of married women originate, says : "Decipientibus mulieribus senatusconsultum auxilio non est. Infirmitas feminarum non calliditas, auxilium meruit." V. 2, § 3. Ulp. lib. 29. (§ 31, tit. 1, lib. 16. Paris edition.)

In all obligations arising from quasi-contracts, offences and quasi-offences, the wife is bound, on that ground, without authorization.

"Ajoutons ici que la femme est obligée sans autorisation par son délit ou son quasi-délit, et qu'elle l'est également si elle a géré sans mandat les affaires d'un tiers. En effet, les tiers ne peuvent être victimes, soit du délit ou du quasi-délit, soit des mauvais résultats de l'administration dont la femme s'est emparé spontanément. Enfin, *la femme pourrait être obligée par la gestion d'affaires d'un tiers.*" Proudhon, Etat des Personnes, p. 463, et notes.

These authorities appear to us to cover the present case. The plaintiff was a gardener, and attended besides to the general administration of the place, for the exclusive benefit of the appellant, as he was informed. She represented herself as the owner of the plantation, administered it in her own name and right in presence of her husband, and received the fruits it produced. Under these acts and representations, the plaintiff was not bound to inquire into her title. He had good reason to believe that he was working on paraphernal property, which the appellant had capacity to administer, without the assistance of her husband, under art. 2361 of the Code.

Her title to the property is not shown ; but, if it was not paraphernal, the plaintiff was deceived. So far as relates to the rights of third persons, the appellant was, in that case, administering the property of another, and, by the fact of that administration, there was formed between her and the plaintiff, a quasi-contract, which is binding upon her without authorization.

It is a principle of high authority, that the laborer is worthy of his hire ; and the laws which award it to him in cases like the present, are a just limitation of those intended for the protection of the rights of married women.

For the reasons assigned, the judgment of the District Court is affirmed, with costs in both courts.

## SAME CASE—ON A RE-HEARING.

A wife cannot be made responsible for wages due to a laborer for work done for the commu-
nity, in the absence of proof of any fraud or misrepresentations on her part, calculated to
mislead the plaintiff, by inducing him to believe that the property was paraphernal.

A promise by a wife to pay a laborer who had been employed to work on community proper-
ty, is not obligatory. Whether separated in property or not, a wife cannot bind herself
for her husband, nor conjointly with him, for debts contracted by him before or during the
marriage.  C. C. 2412.

THE judgment of the court, on the re-hearing, was pronounced by
SLIDELL, J.  After a careful consideration of this case, we have come to
the conclusion, that the judgment heretofore pronounced was erroneous. *West*
and his wife, were in community when the contract with the plaintiff was made,
and the land which the plaintiff was employed to cultivate was community
property.  Under these circumstances, to impose a liability upon *Mrs. West*, it
was necessary for the plaintiff to establish that she had committed a fraud upon
him, by falsely representing to him, or inducing him to believe, that the property
was her paraphernal property, and by herself employing him accordingly.

The position in which *Mrs. West* placed herself towards the gardener who
succeeded the plaintiff, gave a very strong coloring to the plaintiffs' pretensions;
but its effect is greatly diminished by considering the separation of property
and the bankruptcy of *West*, which had intervened.  Fraud should be clearly
established.  There is here no direct proof of fraud, nor of any representa-
tions made by the wife to the plaintiff, either at the date of his employment or
during its continuance, which were calculated to mislead the plaintiff.  The in-
ferences drawn from her subsequent acts and dealings with others, upon which
the plaintiff's case rested, appear to us, after our renewed examination, to be
insufficient to sustain the suit.  Moreover, on recurring with more care to the
petition, we find it militates against the inference of fraudulent representation,
which was attempted by the plaintiff to be drawn from the wife's subsequent
conduct.  The plaintiff there alleges that he was employed by *West* and wife
as a gardener, upon the place belonging to them.  No suggestion of fraud is
there made, no indebtedness *in solido* is alleged, nor is judgment prayed *in
solido.*

The contract having been a community contract, the property on which the
plaintiff labored community property, and the debt a community debt, the sub-
sequent declaration of the wife to a third person, after the discharge of the
plaintiff, that he should lose nothing and that she would pay him, was unavail-
ing.  If this could be considered as a promise to the plaintiff, still it is not prov-
ed to have been authorized by the husband, and is moreover destitute of legal
effect, under article 2412 of our Code, which declares that the wife, whether
separated in property by contract or by judgment, or not separated, cannot bind
herself for her husband, nor conjointly with him, for debts contracted by him
before or during the marriage.

As to a subsequent acquisition of the land by *Mrs. West*, which is conjectu-
ral, and rests upon inference from her declarations made in conversation with a
third person some months after the plaintiff's discharge, the terms and manner

HELLWIG,
*v.*
WEST.

of such acquisition, if made, whether by judicial sale in [bankruptcy or how otherwise, and whether with or without a divestiture of plaintiff's privilege, do not appear. It is evident no such acquisition was made before the plaintiff's employment ceased.

The case of the plaintiff, a laboring man who had served faithfully and skillfully, is one of great hardship ; but however much it ought to commend itself to the conscience of the appellant, we are bound by the less liberal rules of law to reject his claim, as now presented. We do not wish, however, to be considered as withdrawing the opinion expressed at the former hearing, that where a married woman commits a fraud, she is liable, even out of her separate estate. This reversal is based upon a change in our opinion as to questions of fact.

It is therefore decreed that, the judgment appealed from be reversed ; and it is further decreed, that there be judgment, as in case of non-suit, in favor of the said *Adelaide Duplessis*, wife of *John K. West*, with costs in both courts.