## No. 9399.

Mrs. C. H. Gibson and Husband vs. Bennett Hitchcock et al.
AND
Mrs. C. F. Hitchcock et al. vs. John McKin et al.

### (Consolidated.)

A married woman duly authorized to contract by a competent judge, under Art. 127 Civil Code, cannot contradict her own declarations and the recital in the judge's certificate, in the absence of allegations of fraud against the creditor, or of fraud committed to his knowledge. But evidence under an issue without the required allegations, admitted without objection, will be considered—and the pleadings being thus enlarged, will open the door to the investigation of the real consideration of the contract sought to be enforced against a married woman. If the evidence shows that the contract was not based on the objects stated in the judge's certificate, but for a different object to the knowledge of the creditor, the burden of proof that the contract enured to the benefit of the wife is thus shifted on the creditor seeking to enforce the contract

A judge of a parish court under the Constitution of 1868, was absolutely without power to authorize a married woman to contract a debt exceeding five hundred dollars, even when acting in the absence or place of the district judge on an application addressed to the latter.

In order to give validity to a contract by a married woman for the ostensible purpose of taking her husband out of jail, the evidence must show that the husband was actually incarcerated, and that he was liberated through the means of his wife's contract, either by sale of property or loan of money.

It is not sufficient to show that he was threatened with a criminal prosecution which was averted by means of his wife's contract.

A tax sale of property sold at a previous tax sale, which is itself shown to be null, can convey no title.

APPEAL from the Eighth District Court Parish of Concordia. Young, J.

Dagg & Mason for the Appellants.

Wade R. Young for the Appellees.

The opinion of the Court was delivered by

Poché, J. The following are the salient facts in this complicated litigation.

In August, 1870, Mrs. C. H. Gibson, wife of J. S. Meng, separate in property by judgment from the husband, appeared in a notarial act by which she mortgaged her separate property, to secure a note of $1000, of that date, made to represent a loan which she had secured from Bennett Hitchcock. She had been authorized to make a loan of that amount by the district judge who had issued his certificate to that effect in conformity with the provisions of the Civil Code Arts. 127 *et seq.* The object of the loan as represented in her application to the judge and by the latter's certificate, was to make the last payment on a certain house and lot which she owned in the town of Vidalia.

In March, 1872, a similar act was passed between the same parties, intended to secure a note of $1200 of the same date, representing a loan from the same lender. In that transaction she was authorized by the judge of the parish court, acting in the absence and place of the district judge to whom the application was addressed. In July, 1875, after a few payments on the original debt, Mrs. Gibson Meng renewed, by notarial act, the obligation to pay the balance of the debt which was represented by three promissory notes of $780.76 each, secured by mortgage on the same property which had been previously affected to secure the two original loans.

To that transaction she was authorized by the district judge.

In March, 1878, Hitchcock proceeded by executory process to enforce the payment of the three notes herein above described, whereupon Mrs. Gibson Meng enjoined his proceeding on the grounds substantially as follows:

1. That the act of mortgage under date of July, 1875, was a renewal of those of August, 1870, and March, 1872, and has, therefore, no more binding force or effect than the latter.

2. That neither of said loans enured to her separate benefit or to that of her separate property.

3. That the authorization of the district judge to execute the mortgage of 1870 was null, because it purported to secure a debt already in existence, and was not intended to authorize her to contract a debt as contemplated by law.

4. That the judge of the parish court had no legal authority to act in the absence and in the place of the district judge for the purpose of authorizing a loan exceeding five hundred dollars.

Pending this litigation Hitchcock died, and the proceedings have since been carried on contradictorily with his widow and his daughters his recognized legal representatives.

The issue thus tendered was met by defendants in an answer which is practically a general denial, followed by a special averment of the validity of the mortgage executed by Mrs. Gibson Mong, plaintiff in injunction.

This appeal is taken by her from a judgment recognizing the validity and enforcing the execution of the mortgage.

It is virtually conceded by appellees that the binding force of the mortgage of July, 1875, now in execution, depends upon the validity of the two previous mortgages of August, 1870, and March, 1872.

1. In support of her allegations of the nullity of the first mortgage, plaintiff introduced a copy of her purchase of the property which was subsequently mortgaged, and other documentary evidence tending to show that she had acquired the property in March, 1870, and that the sale was for cash; that, therefore, she owed no balance of payment on the same, and she offered her own testimony and that of other witnesses, to rebut the presumption that the loan had enured to her separate benefit, flowing from the district judge's certificate of authorization. The documentary evidence went in without objection. The parol testimony was resisted on the ground that she could not be allowed to attack or disprove her own solemn declarations made in her application to the judge, and the recital contained in his certificate. It is unfortunate for appellees that their counsel, in his objection, stated his proposition too broadly, as otherwise his bill should have been maintained. The rule on this question, as established in our jurisprudence, closes the door to the wife's attack against a mortgage which she has executed with the authorization of the judge, in the absence of any allegation of fraud against the creditor himself, or of fraud committed at least to the knowledge of such creditor.

The judge did not, therefore, err in refusing to exclude the proffered testimony on the objection that the wife could not, in any case, disprove the certificate of the judge and her own declarations. Jurisprudence has settled that in certain cases she can resort to that defense. Barth vs. Louisa Bond, Manning's Unreported Cases, page 431; McLellan vs. Dane, 32 Ann. 1200; Stapleton vs. Butterfield, 34 Ann. 822. As the proper objection was not urged, the testimony was properly admitted, and the pleadings were thus enlarged sufficiently to justify an investigation into the real consideration of the contract.

But, in addition to that testimony which is of small moment, and to which we have attached little or no importance, we find documentary evidence, to which no objection was made, and which, shows beyond a doubt, that the money alleged to have been loaned to plaintiff was not and could not be used for the object described in her application for authorization to contract and in the judge's certificate.

The authentic act of sale of the immovable property, which was executed full six months previous to the act of mortgage, which had been legally put of record and to which reference is made in both acts of mortgage, shows conclusively that the property had been paid for in cash, and, that therefore, she could not use the money loaned by Hitchcock, for the payment of the balance due on her purchase.

Under this showing, the effect of the judge's certificate is completely paralyzed and the burden of proving that the contract enured to the benefit of the wife is thus shifted on the creditor, who seeks to judicially enforce the same. Conrad and Husband vs. LeBlanc et al. 29 Ann. 24; Felman vs. Stapleton, 24 Ann. 89.

From the documentary evidence in the record, which was admitted without objection, it appears to our satisfaction that Hitchcock was fully aware of the misrepresentations in the wife's declaration and followed in the judge's certificate. This places him within the rule of the excepted cases contained in our reports.

These conclusions, both of law and of fact, are virtually conceded by appellee's counsel, and his theory is that the money, which was the subject matter of the contract, was actually loaned to and used by plaintiff in the construction of a dwelling house on the lot in question, which was vacant when she purchased it. His main reliance is on the testimony of the lamented Judge Spencer, one of our illustrious predecessors.

We have carefully considered his testimony, which amounts at most to the assertion that it was the witness' impression that the money borrowed was used to pay either for the lot or for the construction of the house now standing on it. It stands to reason that such testimony is glaringly insufficient to satisfy the requirements of the law for affirmative and positive proof of the real consideration of a married woman's contract.

Our conclusion is that defendants have utterly failed to prove that the loan of $1000 in August, 1870, was made to or enured to the benefit of the plaintiff in injunction, Mrs. Gibson Meng.

2. This brings us to the secured mortgage, for $1200, executed in March, 1872.

The record shows that the authorization was given by the judge of the parish court, acting in the absence of the district judge.

Art. 127 of the Civil Code requires that the authorization must emanate from the judge of the district or parish according to the amount involved. It follows that in this case the exclusive power was vested in the district judge, hence the application was properly addressed to him, but it was improperly acted upon by the judge of the parish court. Section 2027 of the Revised Statutes of 1870 cantains a detailed enumeration of all the orders which judges of the parish courts were empowered to grant in the absence of district judges.

The power to examine married women under the provisions of Art. 127 of the Civil Code, is not included—it was therefore withheld, and it could not be exercised. Neil vs. Hibard, 30 Ann. 811, 493.

We therefore conclude, that the authorization, emanating from that officer in the present matter, was an absolute nullity, Hence the case stands as though the wife had not been authorized at all. The burden of proving that the consideration of the contract enured to plaintiff's separate benefit is therefore on the defendants.

Their contention is that the money borrowed was used to screen plaintiff's husband from a criminal prosecution, and practically to take him out of jail, and that the wife is bound under the provisions of Arts. 119 and 2361 of the Civil Code as expounded by this Court in Nuttby vs. Sheriff, 16 Ann. 337; and Saffa vs. Myers, 33 Ann. 408.

In both of those cases it appears that the husband was actually incarcerated under prosecution for heinous offenses, and that he was liberated through and by means of the contract of his wife, which she attempted to repudiate.

In the instant case, the record shows that Meng, the husband, was a defaulter as a collector of United States Internal Revenue, and that the criminal prosecution threatened therefor against him by his superior officer, was averted by means of a settlement made with the money loaned by Hitchcock. But it is not shown that he was ever arrested, and much less incarcerated, on account of his criminal conduct.

Common decency and a proper sense of honor and honesty would, it seems to us, combine to prompt a dutiful wife to pay an indebtedness thus contracted, but to those who turn a deaf ear to those motives the law does not attempt to impose the obligation, and hence we are powerless to relieve the unfortunate creditor who has been deceived in his confidence and betrayed in his friendship.

Our article, 2361, which authorizes the sale of the wife's immovables, under certain conditions, in order to liberate the husband from jail, has been taken from article 1558 of the Code of Napoleon—and hence our courts should follow the construction placed thereon by the French tribunals.

It has been uniformly held in France, that to justify the contract therein authorized, the husband must be actually incarcerated, and that the rule cannot apply in the case of a mere threat of imprisonment. Gilbert Code Annotés, p. 736; Troplong Droit Civil, vol. 4, p. 556 ; Marcadé, vol. 6, p. 70.

The proof on this branch of the case also fails, and this leaves the defendants without a case on their executory process. Hence the injunction sued out by plaintiff should have been perpetuated, and the judgment dissolving it is therefore erroneous.

The other case, which has been singularly consolidated with the above suit, involves the validity of a tax-title to the same property to Bennett Hitchcock in 1877, under an offer of the property at a public sale, for the taxes of the years 1871, 1872, 1873, 1874, 1875 and 1876.

Pending the litigation which hereinabove occupied our attention, after the death of Hitchcock, the property was offered for sale, as the property of his succession for the unpaid taxes of the years 1877 and 1878, and it was adjudicated to John Mackin—Mrs. Hitchcock and her daughter claiming ownership under the tax-title of Hitchcock, and as mortgage creditors claimed the legal right of redeeming the property from Mackin, and to that end made him the tender of the amount of taxes, with penalties interests and costs which he had disbursed.

On his refusal they brought this suit for the purpose of compelling him to accept their tender with a view to a recovery of the property, and Mrs. Gibson Meng was made a party to the suit.

She answered denying the validity of the tax-sale, on grounds of defective assessment, including the nullity resulting from the assessment of the property in the name of her husband. Her answer was adopted by Mackin.

The district judge annulled Hitchcock's title, but recognized the right of his legal representatives to redeem the property from Mackin, under his purchase at the tax-sale.

The record contains the following admission :

"It is admitted by counsel for C. F. Hitchcock et al. that the description of the property sold to Hitchcock for taxes of the years 1871, etc., as it appears on the assessment rolls, is too vague and indefinite to operate a conveyance of title or to serve as a basis of a valid title."

Under that admission no other judgment could be rendered but one of nullity of Hitchcock's title—and to that extent the judge is correct. But we are at a loss to conceive of the grounds on which he could possibly rest that portion of his judgment which condemns Mackin to reconvey the title to Hitchcock's representatives. The taxes which underly Mackin's purchase had been assessed against Hitchcock's estate as owner. But as he had no title, the adjudication could manifestly transfer none to Mackin; hence it is absolutely idle to comand him to reconvey the property to the Hitchcock succession. His tilte is "something nothing" and has no existence in law.

That part of the judgment is glaringly erroneous. It is, therefore, ordered that in so far as the judgment appealed from decrees the nullity of the tax-title set up by the Hitchcock succession to the property involved in this litigation, it be affirmed; and that in all other respects said judgment be annulled, avoided and reversed.

It is further ordered that the demand of E. C. Hitchcock et al. for the right of redeeming said property from John Mackin, be rejected, and their action dismissed. And it is further ordered that the injunction sued out against the executory process taken out by Hitchcock against the property of Caroline H. Gibson, wife of J. S. Meng, be perpetuated; and the notes sued upon be decreed null and the mortgages intended to secure the same be cancelled, annulled and erased. It is further ordered that the legal representatives of Bennett Hitchcock be condemned to pay all costs in both cases in the lower court, and on the present appeal; without prejudice to the right of said parties and of John Mackin to judicially enforce such claims as they may have for the recovery of the funds disbursed by them at their respective tax-sale adjudications.

Rehearing refused.