Saufley vs. Joubert.

No. 12,934.

Mrs. Susan A. Saufley, Wife, etc., vs. Leon Joubert.

## Syllabus.

The lender who lends money to a married woman is not required to inquire into the purpose of the loan, when she is duly authorized by the court to borrow a specific amount.

The judicial admission of the wife when being examined by the judge, that the amount she was about to borrow, when she appeared before the judge, was to be used for her separate advantage, and the preponderance of testimony showing that the lender was not aware that the purpose of the wife was other than that shown by the certificate, will conclude the wife, and render it impossible for her to have the mortgage decreed a nullity.

The judge of the District Court saw the witnesses, heard them testify; the review of their testimony on appeal led to the conclusion arrived at by him.

Under the rules of evidence, witnesses for each party being about equal in number, the burden of proof being with plaintiff, and plaintiff's declarations when the loan was gotten, not being in harmony with allegations made in her pending suit: HELD: That plaintiff has no right of action to set aside the act of mortgage attacked.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Frank E. Rainold* for Plaintiff, Appellant.

*A. J. Villere* for Defendant, Appellee.

*Dinkelspiel & Hart* for Civil Sheriff, Defendant and Appellee.

Argued and submitted February 23, 1899.
Opinion handed down March 7, 1899.
Rehearing refused May 15, 1899.

The opinion of the court was delivered by

BREAUX, J. The object of plaintiff in instituting this suit was to annul and have decreed void a mortgage which she signed to secure a loan made by the defendant, also to obtain a judgment annulling a sale made in foreclosing the mortgage, and pronouncing the note of mortgagor, identified with the act of mortgage she executed, null and of no effect.

We are informed that plaintiff's husband was the principal owner of a factory for creosoting wood by a process of which he is the originator and patentee; that the charter of the company was a nullity, and that, in fact, the interested parties were only partners and owners of the business in tho proportion of $50,000 of the firm owned by plaintiff's husband, and $5,000 by the other partners; and in consequence of the large interest of her husband, plaintiff in this suit alleges that the business of the firm was, in reality, his own.

Owing to the financial embarrassment, the company had to close down and stop its business. Plaintiff sought to prove that, about that time, her husband sought a loan from defendant, and to secure it offered a mortgage on the company's property, which defendant declined after having found out in course of a talk with her husband that the company was not a going concern, and would remain idle until the money was obtained.

That, therefore, he made known to defendant that plaintiff had improved property which he would mortgage to secure the loan; that he held plaintiff's power of attorney, and that he had, moreover, an equitable interest in the property of his wife, growing out of the payment by him of a mortgage of $9,000 resting on the property at the date of their marriage.

The testimony discloses that defendant consented to make the loan, and accept the mortgage offered. He informed plaintiff's husband and agent that his lawyer, after an examination, made a favorable report as to the title. He, at the same time, asked him to call on the lawyer the next day with his wife to have the petition signed, which, it appears, was done.

Defendant's lawyer is also a notary. Plaintiff's husband employed him as notary, and, as such, directed him to draw up a mortgage upon the property of the company to secure the wife.

The contention of the plaintiff is, at this point in the case, that the

notary, who was defendant's lawyer, was fully informed of the facts before recited. The acts were written the same day, and plaintiff avers that the check handed over by the lender, the defendant, was made out in her favor, and that immediately it passed into the hands of the secretary of the Creosoting Company.

It appears of record that the company went into liquidation; that it was insolvent, and that plaintiff never got anything out of the insolvency.

Defendant, as a witness, testified that he did not know anything about the use the plaintiff intended to make of the money, and that he loaned it in the regular course of business; that plaintiff's husband came to his office and offered the mortgage, which he accepted; that plaintiff's husband talked at some length, but that if he had said anything about wanting the money for himself, to be secured by mortgage on his wife's property, the loan would not have been made; that he had experience as a lender of money, and knew that that was not sanctioned by law.

Defendant's lawyer and notary swore, that, at whatever time his client, the defendant, makes loans, he leaves it to him to examine the title, and if he is satisfied of its legality, he is usually directed to prepare the deed, and that when a married lady is the borrower, she is required to furnish the certificates of the judge, authorizing her to borrow the money. That he, in this case, made the usual examination; that he prepared the deed, and that then the mortgagor signed the act. He had the usual certificate in his possession authorizing her to sign; that the act of mortgage to the defendant was signed in the morning, and the act of mortgage on the Creosote Company, in favor of the wife, was signed in the afternoon of the same day the mortgage to the defendant was signed. The witness testified that plaintiff's husband never told him that the two acts were in any way connected, one with the other, and that he, the witness, had no reason to suspect that there was any connection between them; that when plaintiff's son came to his office to sign the second act, there was no conversation held, as stated by the former, that the money borrowed from the defendant was to go into the business of the Creosoting Company.

One or two suits grew out of defendant's foreclosure proceedings under the mortgage he held against plaintiff. One of these was decided by this court. Joubert vs. Sampson, 49th Ann., 1003.

The judgment of the District Court was in favor of defendant.

From the judgment plaintiff appeals.

For a long time in the history of jurisprudence of this State, it was not enough to prove that the wife received the money to recover on a mortgage signed by her as mortgagor; proof that it was for her separate advantage was required.

In 1855, the adoption of a statute effected a change which has been repeatedly interpreted by the Supreme Court as relieving the creditor from the necessity of proving, in order to recover, that the amount loaned was applied, as the act of mortgage imported, to the borrower's benefit and advantage.

Although the money, after the loan was effected, was placed to the credit of a corporation in which the husband of the plaintiff was principal stockholder, or (if the charter of this corporation was a nullity, as contended by plaintiff,) to the credit of a partnership, in which he (the husband) was the principal owner and partner, it would not have the effect of rendering the mortgage given by the wife, a nullity, provided the lender, prior to the loan, had no knowledge of the intention of the borrower to apply the amounts to the payment of her husband's debts.

In the case of Dougherty vs. Hibernia Insurance Company, 35th Ann., 629, the position of the married woman was that, as she could not mortgage her property, for the benefit of her husband, as she had done, the burden of proof was on the lender. The court, meeting this contention, held, that in the absence of fraud, or complicity on the part of lender, the latter is not bound to look behind the judge's certificate; citing a number of decisions in support of the interpretation.

Here the weight of the evidence shows that the defendant had no such knowledge as plaintiff charges in her petition.

The importance sought to be given to conversations said to have been held many years ago, between the plaintiff's husband and defendant, and the talk the son claims to have had with the notary and lawyer, lose all force in the presence of the positive denial of two witnesses for defendant, as far as we know, equally as credible as the two witnesses first mentioned, who testified for plaintiff. We have seen that the burden of proof on this point was with the plaintiff. She obtained a certificate from the judge on her own testimony, that the loan was made to her in her own interest and for her advantage. The judge of

the District Court after hearing these witnesses decided that the weight of the testimony was with the defendant.

Having given these grounds due weight, and after an attentive reading of the testimony of the witnesses, we did not find that our learned brother of the District Court erred.

Plaintiff pitched her case exclusively on the ground of defendant's knowledge of her husband's intention to use the money loaned, in his business, and to appropriate it to himself. Having failed to sustain this ground by preponderance of proof, no alternative is left us save to affirm the judgment.

There was no question before the court of complicity, fraud or persuasion, only the one question of knowledge of plaintiff's intention when she borrowed the money. Her judicial agreement in this regard, we have seen, is supported by the testimony of two witnesses, contradicted, it is true, by the husband of the plaintiff, also in part by her son.

In our judgment, under no rule of evidence, would we be justified in reversing the judgment of the District Court.

The law and the evidence being with the defendant, the judgment appealed from, is sustained.