(48 South. 914.)

No. 17,116.

KOHLMAN v. COCHRANE.

(Dec. 14, 1908. On Rehearing, March 29, 1909.)

1. HUSBAND AND WIFE (§ 169*)—WIFE'S SEPARATE ESTATE — MORTGAGES — ORDER OF COURT.

The legal capacity of a married woman to create debts against herself and to mortgage her property is not essentially dependent upon the fact that she should have applied to and obtained the authority of the district judge to create such debts and to grant such mortgages. The authorization of such judge and his certificate thereof are accorded by law to a married woman as a protection to herself from her imprudence and ignorance, and as protection in respect to her capacity to the public who might deal with her.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 660; Dec. Dig. § 169.*]

2. HUSBAND AND WIFE (§ 152*)—WIFE'S SEPARATE ESTATE—CONTRACTS—ORDER OF COURT —ESTOPPEL.

Where a married woman, having recourse to proceedings taken by her under articles 126 and 127 of the Civil Code, not only fails to avail herself of the opportunity for protection afforded to her, but makes use, on the contrary of these proceedings designedly or through ignorance to deceive or mislead the public by misstating or suppressing the actual facts of the case, she should not be permitted to avail her-

self later of the actual facts to work injury upon those who have shaped their course in ignorance of those facts and acted in good faith, relying upon her action and conduct. A married woman is not released from all responsibility for her conduct.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 596; Dec. Dig. § 152.*]

(Syllabus by the Court.)

Appeal from Fourteenth Judicial District Court, Parish of Avoyelles; Gregory Horatio Couvillon, Judge.

Action by Louis Kohlman against Clara Cochrane. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Peterman & Couvillon, for appellant. Lafargue & Lafargue, for appellee.

NICHOLLS, J. The plaintiff seeks to recover from the defendant, wife of David Siess, from whom she is judicially separated in property, the sum of $3,400, with interest thereon subject to certain credits, and to obtain recognition and enforcement of a special mortgage as securing payment of said amount on the property described in his petition. His prayer for judgment was based on the allegations that he was the holder and owner for value in good faith and before maturity of four promissory notes executed by the defendant with the authorization of her husband, and all dated on the 27th of May, 1898, maturing respectively on the 1st of January, 1901, 1902, 1903, and 1904, to the order of and indorsed by the maker, the two notes falling due on the 1st of January, 1901 and 1902, being each for the sum of $900, and those maturing in January, 1903 and 1904, being each for $800, all bearing interest at 8 per cent. per annum from January 1, 1899, until paid. That these notes were on the date of their execution, by act before Alfred E. Gremillion, notary (with which act the notes were identified), secured by the maker, with her husband's authorization, by special mortgage on the property described in that act in favor of Henry Newman and in favor of any future

holder or holders of said notes. That the said special mortgage was made and executed after presentation to said notary of the judicial certificate authorized by article 127 of the Civil Code. That the debt evidenced by said notes and secured by said mortgage was one which inured solely to the separate advantage of the maker (Mrs. Siess), or to the separate benefit of her paraphernal estate. That the said mortgage and said certificate accompanying the same were duly recorded in the parish of Avoyelles.

Defendant answered, pleading, first, a general denial. Further answering, she denied that the plaintiff was the owner and transferror of the notes sued on, and which he alleged were in his possession. She alleged that her husband, David Siess, had for years been doing business with H. & C. Newman, and that, as he became embarrassed in his pecuniary affairs, she had to protect her future earnings and property from his creditors by becoming separated in property from him by judgment of court.

That her husband continued to do business with H. & C. Newman on the 15th of April, 1890, through the solicitation of H. & C. Newman, and through the entreaties, persuasions, threats, and marital influence of her husband she executed notes in favor of Henry Newman, of said firm, and gave a mortgage on her separate property to secure the payment of said notes. Respondent averred that the indebtedness for which said notes and mortgage were given was the debt of her husband, and that it did not inure to her credit or that of her separate estate.

Respondent averred that on the 27th day of May, 1898, the said firm of H. & C. Newman, and particularly Henry Newman, requested and demanded a renewal of said notes due and said mortgage under threats, and her husband coerced and influenced her again to recognize said debt, though said Newman knew, as well as her said husband, that it was for the debt of her husband. Respondent averred that she refused at first to renew the notes and give a second mortgage, as the consideration was the indebtedness under the first mortgage, and that was the debt of her husband. That she did not receive any money or other values, and nothing was paid to her under either mortgage or as a consideration for the notes. The notes were given in representation of an indebtedness due by her said husband, David Siess, in the first instance, and, in the second, in representation of the debt due under said first obligation, none of which inured to her benefit or that of her separate estate.

Respondent averred that in truth and in fact the notes sued on were for the debt of her husband, and the effort of respondent to assume said debt and give a mortgage therefor was in contravention of a prohibitory law, and therefore void, and the nullity could be pleaded, and the judge's certificate was no bar thereto, for the reason that no money or other values was put out by said Henry Newman on the faith of said certificate, but said notes and mortgage were given simply to cover an antecedent debt due to said Henry Newman by her said husband, which debt did not inure to her benefit or that of her separate estate, and this the judge's certificate did not and could not authorize. Respondent represented that said Henry Newman kept money he had belonging to her, and failed to allow her credit which he received from the Greenwich Insurance Company on August 4, 1901, being the sum of $1,054.92 paid by said company as insurance on her gin, which burned in Mansura, and also $50 received on August 8, 1901, for right of way across her lands from the Shreveport & Red River Valley Railroad Company, aggregating the sum of $1,104.92, which should be credited on the notes sued on, if any portion thereof was shown to be her debt, but which she denied emphatically.

Respondent averred that the notes sued on

were the property of Henry Newman, and it was only after their maturity that plaintiff claimed to be the owner of the same. She represented that said amount above mentioned was paid long before plaintiff claimed ownership of the notes.

In view of the premises, respondent prayed that the demand of plaintiff be rejected and his suit be dismissed, and that the notes sued on and the mortgage given to secure their payment be declared to be for a debt of respondent's husband, and not enforceable in law against her, and absolutely null and void, and that same be ordered canceled.

Respondent further prayed that in case any portion of the debt sued on be recognized as her own that she be allowed credit on the same to the amount of $1,104.92, amount collected as aforesaid, to take effect August 8, 1901. Respondent prayed for costs and general and equitable relief.

The district court rendered judgment in favor of the plaintiff against defendant, Clara Cochrane, wife of David Siess, for the sum of $800, with 8 per cent. per annum interest thereon, from January 1st, until paid, and, recognizing that payment of said amount was secured by special mortgage on the property described in plaintiff's petition. It decreed that said mortgage be enforced upon said property. The court further ordered, adjudged, and decreed that in all other respects the demand of the plaintiff be rejected. It ordered that defendant pay all costs.

Plaintiff has appealed. The defendant has answered the appeal praying that the judgment appealed from be set aside in so far as it condemned the defendant to pay plaintiff the sum of $800, with interest, with recognition of mortgage on her property, and that in other respects it be affirmed.

On the 14th of April, 1890, Mrs. Clara Cochrane, wife of David Siess (her said husband then and there present aiding and authorizing her so to do) specially mortgaged by notarial act before Alcide E. Bordelon, notary public in and for the parish of Avoyelles, certain real property belonging to her in that parish, which was described in the act of mortgage, to secure the payment of five promissory notes, that day drawn and executed by her, one for $808.58, two for the sum of $500 each, another for the sum of $425, and the remaining one for the sum of $400, all of said notes payable to the order of Henry Newman, at the Whitney National Bank in New Orleans, on the 1st day of December in the years 1890, 1891, 1892, 1893, and 1894, bearing 8 per cent. per annum interest from the 1st day of April, 1890, until paid. The mortgage was made in favor of Henry Newman or any further holder of said notes.

The mortgage was accepted by Newman through his attorneys. In the act Mrs. Siess declared that:

"She was justly and truly indebted to Henry Newman in the full sum of two thousand six hundred and thirty-three dollars and fifty-eight cents, advanced and paid to her for the purpose of enabling her to liquidate and discharge her separate property from the lien and obligation of certain mortgage debts with which her said separate property was incumbered."

The parties declared that the certificate of mortgage required by article ——— of the Revised Civil Code was dispensed with by them, and that they freed the notary from any responsibility for nonproduction of the same.

Accompanying this act and annexed to it for reference was a certificate of and authorization from the judge of the twelfth judicial district to the effect that Mrs. Clara Cochrane, wife of David Siess (her husband being present to assist and authorize her), had appeared before him and declared that it was her wish and intention to borrow the sum of $2,633.58 for the purpose of enabling her to liquidate and discharge her separate property from the lien and obligation of certain mortgage debts with which her said property was incumbered.

The judge certified that he had examined Mrs. Clara Cochrane, in accordance with article 127 of the Civil Code, in chambers, separate and apart and out of the presence and hearing of her husband, and that she had satisfied him that the debt was to be contracted for the purpose aforesaid.

In view of the premises—

"he authorized and empowered her to contract the said debt, to sign and execute any and all necessary note or notes required in the premises and to grant and execute a mortgage to secure the same upon the property by her owned, consisting of a tract of land containing twenty-one $15/100$ arpents situated in the town of Mansura now occupied by her as a resident, as the said Mrs. Clara Cochrane requested so to do."

Neither in the certificate and the authorization of the judge, nor in the act of mortgage subsequently executed by Mrs. Siess, were the existing mortgages which were declared to be then existing described, nor were the parties who held the same named There is, however, found in the transcript a copy of an act of sale passed on the 29th of December, 1886, before Pierre A. Durand, notary public, by which Alonzo L. Boyer sold with full warranty to Mrs. Clara Cochrane, authorized and assisted by her said husband, David Siess, from which it was declared that she separated in property:

(1) A tract or parcel of land in the town of Mansura containing 40 arpents, more or less (boundaries described), being the same land acquired by the vendor from David Siess, by act before the notary on the 16th of January, 1886.

(2) A lot No. 12, of the sixteenth section, T. 11 N., R. 4 E., situated in the town of Mansura, with the steam engine, cotton house and gin, and all the buildings and improvements thereon, containing eight arpents more or less, being the same lot acquired by the vendor from David Siess on the 26th of January, 1886, by act before the same notary.

(3) A tract of land situated near Mansura, 123 La.—8

with all the buildings and improvements thereon, acquired by the vendor from David Siess, through notarial act as stated.

The sale was made for the consideration of the price of $2,000 of which $1,000 was hard cash, and the balance represented by two notes each of $500, payable on the 1st of January, 1888, and the 1st of January, 1889, with 8 per cent. interest from their respective maturities, said notes drawn to the order of and indorsed by the purchaser, and payment of these two notes being secured by the special mortgage on the properties so purchased.

There is also in the transcript a copy of a notarial act of the 10th of May, 1876, before Durand, recorder of the parish of Avoyelles, in which Jules C. Defousses, acting as administrator of the succession of Elizabeth Bowman, declared at a sale made by him on the 3d of May, 1876, under order of the parish court of Avoyelles, of the lands belonging to said estate, Mrs. Clara Cochrane, wife of David Siess, separated in property from him, had purchased the town property upon which the deceased had resided in the town of Mansura, containing 20 arpents, more or less (boundaries given), for the price of $850, payable one-fifth cash, and the balance in four equal installments maturing severally at one, two, three, and four years from the day of sale, with interest from the several maturities at 8 per cent. per annum, in representation of which she had executed her four promissory notes to the order of the said administrator, which notes were secured as to payment by special mortgage on the property purchased by her.

In view of the premises, the said administrator sold and conveyed the said property to Mrs. Clara Cochrane then and there present. As appeared by said copy of sale, Mrs. Clara Cochrane and her husband, David Siess —the latter to authorize and assist his wife —appeared as parties to said notarial act,

and signed the same, she accepting the sale so made to her, and executing the notes and granting the special mortgage to secure payment thereof as recited in the act.

The parties to the act dispensed with the production of a certificate from the recorder as to the mortgages which might exist on said property.

On some day prior to the 27th of May, 1898, Mrs. Clara Cochrane, wife of David Siess (from whom she was separated in property), presented to the judge of the district court for the parish of Avoyelles a petition in which she declared that Henry Newman held against her four mortgage notes aggregating the sum of $1,825, representing balance of a mortgage executed by her on April 4, 1890, in favor of Henry Newman, as well as another mortgage note for $1,100 executed by her on March 9, 1894, in favor of H. & C. Newman, which, together with interest up to January 1, 1899, amounted to the sum of $4,473.54, which said amount inured to her own separate use and benefit, and not to the benefit of her husband. That in order to redeem said notes and release her property from the operation of said mortgage she desired to obtain from him an authorization permitting her to grant and execute in favor of said Henry Newman a mortgage for the aforesaid sum of $4,473 upon the cancellation and surrender of said notes. She therefore prayed that after due examination and interrogatories by him she be authorized to grant in favor of said Newman a mortgage on her property to the said amount.

On reading this petition the district judge signed a certificate in which he recited the fact that he had done so, and that he had thereafter re-examined her apart and out of the presence of her husband, and that she had satisfied him that the allegations of her petition were true, and that the mortgage sought to be executed by her in favor of Henry Newman was for the purposes set out in her petition; that is to say, to redeem from said Henry Newman the following notes: [Describing the mortgage notes described in her petition.] In view of the premises, he authorized her to execute in favor of Henry Newman a mortgage for the aforesaid sum of $4,400.54 on her separate property.

On the 27th of May, 1898, by notarial act before Gremillion, notary, Mrs. Clara Cochrane, wife of David Siess (authorized thereto by her husband, then present), declared that she was well, truly, and legitimately indebted to Henry Newman in the sum of $4,473, which amount represented five certain promissory notes delivered to her duly canceled by William J. Peterman, agent and attorney in fact of said Newman, and fully described in the authorization of the district judge annexed to and made part of the mortgage act then being executed. She further declared that in order to represent said indebtedness she had on that day drawn and executed to her own order and by her indorsed six several promissory notes made payable as follows: One for the sum of $473.54 due January 1, 1899, one for the sum of $600 due January 1, 1900, one for the sum of $800 due January 1, 1901, one for the sum of $900 due January 1, 1902, one for the sum of $900 due January 1, 1903, one for the sum of $800 due January 1, 1904, all bearing 8 per cent per annum interest thereon from January 1, 1899.

These notes were identified by paraph with the mortgage act then being executed and delivered to William J. Peterman, attorney and agent of Henry Newman.

In order to secure the payment of the notes so executed, the appearer, Mrs. Clara Cochrane, specially mortgaged in favor of Henry Newman, or any future holder of the notes, the property described in the act. She further bound herself to insure and keep insured against fire the property de-

scribed by the number "3" in the mortgage act, designated as the gin lot, and to transfer the policy to the mortgagee, the policy to be collected by him and applied to the credit of the mortgage then granted.

It was agreed between the parties that upon the payment of the two first notes due respectively January 1, 1899 and 1900, the mortgagee would release the mortgage then being granted in so far as it affected the property described in the act under the number "2," designated as the "Home Place."

The testimony of Louis Kohlman, the plaintiff, was taken under commission. He testified that on October 14, 1902, he bought from H. & C. Newman one note due January 1, 1903, for $900, with interest, for the sum of $900. On March 19, 1903, he bought from H. & C. Newman three notes aggregating the sum of $1,929, with interest, for $1,745. The maturity of the last three notes was as follows:

One note showing a balance of $229.33, due January 1, 1901, one note of $900, due January 1, 1902, and one note of $800, due January 1, 1904, for which he gave H. & C. Newman a check on the State National Bank, and all of those notes were owned and held by him and were for collection in the present suit; he bought them in good faith, and knew nothing of any defect in them or that the defendant disputed her liability upon them.

The defendant, Mrs. Siess, was placed on the stand as a witness in her own behalf.

She was asked whether she had not executed notes and granted a mortgage in favor of Henry Newman in April, 1890, to which she replied that she had. She was then asked for whose debt they were given, to which she answered "for her husband's." She was then asked whether she remembered any special debt of her husband's was included in the notes and mortgage of 1890, to which she replied, "Yes, one debt that her husband owed to Hambro & Sons of $1,100, and $711 of interest, that Mr. Newman paid for her husband; that those notes and that mortgage included $1,100 due by her husband under a judgment of Hambro & Sons, and $711 paid by Henry Newman as interest on that judgment." Proceeding, she testified under questions propounded to her that the interest on the judgment was paid by Newman before she executed the judgment (mortgage) the year before; the other items of the amount of the notes and mortgage were not due by her, but by her husband; no portion of the same inured to her benefit or that of her separate estate; that she had not voluntarily and willingly given these notes and that mortgage; she did not want to accede to it, but it was by threats and promises that she signed the mortgage—threats and promises by her husband and Mr. Newman. When she gave the mortgage of 1890, Mr. Newman added or put interest on the $1,100 and $711 which she had testified to about 8 per cent. interest; she did not remember the year when Newman paid the $711 interest on the Hambro judgment. The second mortgage which she gave was in May, 1898. It was given to renew the old mortgage. Outside of the old mortgage there was included therein $1,400 due on a note given by her to Mr. Newman, she believed, for advances on her place; it was her note. Outside of that note for $1,400, no part of that debt inured to her benefit or that of her separate estate. When she received the judge's certificate she had not received any part of the $1,400; it was an account carried on for her plantation; it was to be given to her. Mr. Newman and her husband made her give the second mortgage; she did not give it voluntarily, but was forced to do so by her husband and Mr. Newman. During all those years her husband was doing business and handling that money from Newman; she never received any

benefit or anything in all those transactions, not a cent. Mr. Newman collected in 1901 $1,050 for her from insurance policy which was paid for the burning of her gin. He never paid her a cent of that money; he also collected $50 from the railroad for a right of way over her place. On cross-examination she testified that two of the notes securing the mortgage of 1898 had been paid, one for $454, the other for $600. Being asked whether she had not about 1895 executed a mortgage in favor of N. Thompson for $1,590, she said she had not, nor had she executed one to Boyer or Jules Defousses. She first denied that the first mortgage given to Newman in 1890 had been canceled (on redirect examination she admitted that it had been). The defendant examined Henry Newman under a commission as a witness on her own behalf, and propounded to him a number of questions, to which he answered substantially as follows:

The firm of which he was a member had had business relations with the defendant (Mrs. Siess) beginning in 1875 until recently; during that time he occasionally loaned sums of money to her husband individually; the first series of mortgage notes which Mrs. Siess executed was given to cover an existing indebtedness, being the balance due after business dealings of about 15 years. It was impossible for him to furnish an itemized statement of said indebtedness, as the books since 1875 were not available. It was impossible for him to state what amounts were paid on the first series of mortgage notes up to 1898, as the parish records would show another series of notes was then executed covering the balance due on the first mortgage notes and the balance due on an open account, as Mrs. Siess continued to do business with his firm; there was nothing due by Mrs. Siess to him on the notes, as they had been sold by him and had passed out of his hands. It was impossible to furnish an itemized statement of the business, as every record in a business as large as that of his firm could not be kept for as long a period as 30 years. It was the custom to occasionally dispose of old records to junk dealers, and statements of accounts were regularly sent to defendant each year, and at no time was any objection or fault found with same.

The business with Mrs. Siess was conducted principally through her regularly authorized agent, David Siess, and all the obligations were contracted for Mrs. Siess, and he could not recall what debts she contracted personally; he could not recall that any one else had any charges made to the defendant's account, nor to whose order Mrs. Siess made her various drafts drawn on the firm payable, as it was impossible to remember such items.

He had made personal loans to David Siess, and two notes were still past due and unpaid, one of date October 1, 1897, due January 1, 1899, for $128, which note was renewed by agreement and extended to mature on January 1, 1905; also one note of date April 6, 1904, due seven months after date, for $100.

He did not recall that any one directed any charges to be made of an obligation of David Siess, nor did he recall that any such charge was. The defendant's husband still owed him a sum of money, as had already been stated.

The defendant, Mrs. Siess, being recalled as a witness on her own behalf, was cross-examined by plaintiff's counsel as to whether she had purchased any property along about 1887 from Lonzo Boyer and Jules Defousses. She replied, "No, sir." The question being repeated, she asked, "From Jules Defousses?" and answered, "Well, I bought our place there at the succession sale—it was not this property" (the property in suit).

Asked whether she remembered purchasing property from Lonzo Boyer or Jules Defousses partly on cash and partly on credit, she answered, "No, sir; not from Boyer."

Being asked whether she had any recollection of having bought property from these people and paying the mortgage in 1890, she answered she did not.

On the trial defendant introduced in evidence an instrument bearing date New Orleans, March 31, 1888, to the following effect:

David Siess owing Henry Newman $1,175.-08, the amount of a judgment now due by said Siess, and rendered in the Circuit Court of the United States for the Eastern District of Louisiana, in the suit of J. C. Hambro & Son versus David Siess et al., No. 8,001 of the docket of said court, the said sum being the amount of principal and costs, all interest up to this date having been paid, Henry Newman agrees to give said Siess a stay of execution on said judgment for one (1) year from this date, which stay of execution the said Siess accepts.

The amount to become due at the end of the stay of execution to be the principal of the judgment as above stated, with interest as stipulated in the judgment from this date until payment eleven hundred and seventy five 08/100 dollars.

On April 4, 1890, Henry Newman wrote the following letter addressed to David Siess, individually:

"Mr. D. Siess, Mansura.

"Dear Sir: In reply to your letter of the 3rd instant, I am very much surprised at the tenor of your letter for when we have agreed upon everything and I wrote the letter in your presence to Messrs. Thorpe & Peterman and in order to avoid any misunderstanding I got you to O. K. the same which letter explains everything and I must insist upon its being complied with, for I do not believe in making so many different agreements. Regarding the amount paid me I find upon examination that the amount of $35.05 you paid me Jany. 21/86 was a balance due me for money paid out by me the amount of $174.42 paid March 12th/84,

$50 was for costs paid to me T. B. Brooks and the remainder of $125 was settled as follows:

Interest in judgment............$875 81
Less amount received............ 144 42
Leaving a balance of
    interest of....................$711 39

which you paid by draft on my firm March/88. In conclusion permit me to add that I fully appreciate your remarks relative to having a family dependent upon you, and it is with a sense of pleasure and satisfaction that I refer to my action and treatment towards you and yours.

"I feel warranted in saying that they have ever been of the most friendly nature. All I desire is my own. I wish nothing more and should my explanation not be sufficient to enlighten your legal head, I am ready to explain everything to the satisfaction of any honorably disposed person."

On July 15, 1907, H. & C. Newman wrote to David Siess individually, expressing dissatisfaction with his having failed to comply with his promises made to them while in New Orleans, and urging him to go down to New Orleans and see their firm, otherwise they would write Mr. Peterman to institute legal proceedings against him.

This letter was the last attempt made by them to bring about a pacific settlement. What these letters refer to is not explained. A previous letter of April 12, 1897, refers to some agreement with reference to a redemption of some land in respect to which they claimed that Siess' understanding of the matter was wrong, and urging him to comply with the agreement as contended for by them.

We have examined the case with care, and have reached the conclusion that the claim of the defendant that the notes and mortgage executed by defendant in 1890 included the judgment of Hambro & Sons and interest thereon is not borne out by the record. The record shows that, at the date of the defendant's application in 1890 to Judge Coco to be authorized to create a debt secured by mortgage on her property to release its existing mortgage notes on the same, there were mortgage notes outstanding representing the credit portion of price of the properties sold

to the defendant on the 29th of December, 1886, by Alonzo Boyer, and the credit portion of the price of the sale made on the 10th of May, 1876, by Jules Defousses, administrator of the succession of Elizabeth Bowman. to the defendant, in confirmation of the purchase of the property of that succession which she had made at judicial sale in that succession.

The aggregate amount of those outstanding mortgage notes was the sum of $2,633.58, being the same amount for which she recognized and admitted in the act of special mortgage passed on the 14th of April, 1890, that she was indebted to Henry Newman for money advanced and paid by him to her for the purpose of enabling her to liquidate and discharge her separate property from the lien and obligation of certain mortgage debts with which her separate property was incumbered. The fact that such advances were made by Newman was not denied in 1898, when Mrs. Siess was a second time before the district judge for examination and interrogation. In representation of the indebtedness so recognized, defendant executed the notes referred to in that act, and secured payment of the same by special mortgage thereon granted in favor of Henry Newman. The mortgage notes for which Newman advanced defendant money to liquidate and pay were unquestionably debts which inured to her separate use and benefit, as they represented the credit portion of the price of property which through such sales became her own individually, which fact is admitted. The defendant evidently knew herself very little of her husband's business affairs, and based her testimony upon what she had been told by others was the situation. But for this, it would be singular that she should have denied under oath that she had ever granted a mortgage in favor of Thompson, of Boyer, and of Defousses, when there was authentic evidence at hand to disprove her statements. The same may be said of her denial that Newman had paid her the amount of the insurance money due to her from the loss by fire of her gin, and the amount of $50 which he had received from the railroad company for a right of way over her property.

It is true that he did not pay that money directly into her hands, but he applied the same towards the payment of the mortgage notes which he then held. He (Newman) did unquestionably make such application of the money so received. The legal capacity of a married woman to create debts against herself and to mortgage her property is not made essentially dependent upon the fact that a district judge should have authorized her to create such debts and to execute such mortgages. Such certificate and authorization are merely accorded by law to her as a protection from her own imprudence or ignorance, and a protection to the public who might act on the strength of her having the needed capacity.

When a married woman having recourse to proceedings under articles 126 and 127 of the Civil Code not only fails to avail herself of the benefits to accrue to her from the opportunity afforded her thereby, but, on the contrary, makes use of the same as an instrumentality to deceive or mislead the judge and the public by misstating or suppressing the actual facts of the case, she should not be permitted to avail herself later of the actual facts of the case to work injury upon those who have shaped their course relying upon her action and conduct. A married woman is not released from all responsibility for what she does. Hellwig v. West, 2 La. Ann. 2; Saufley v. Joubert, 51 La. Ann. 1048, 25 South. 934; Dougherty v. Hibernia Ins. Co., 35 La. Ann. 629.

It is unnecessary to discuss whether the plaintiff acquired the notes held by him before or after maturity, for, granting they

were purchased by him after maturity and with the equities open as between Newman and herself, we do not think that they can be urged in this case against plaintiff, who not only has acted in good faith and in ignorance of any equities, but, on the contrary, did so by reason of defendant's action and conduct.

We are of the opinion that the judgment appealed from is erroneous in some respects, and that plaintiff is entitled to judgment as prayed for by him.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, altered and amended so that the plaintiff, Louis Kohlman, do have and recover judgment from the defendant, Mrs. Clara Cochrane, wife of David Siess, the sum of $3,400, with interest thereon at the rate of 8 per cent. per annum from the 1st.day of January, 1899, until paid, subject, however, to a credit of $704.42 to take effect on and from the 26th day of October, 1901, and that the special mortgage and hypothecation referred to and recited in plaintiff's petition be recognized as existing upon the separate property of the .defendant, described in plaintiff's petition, and enforced against the same to satisfy and pay the amount of plaintiff's judgment and costs.

## On Rehearing.

PROVOSTY, J. In 1875 the defendant, Mrs. Clara Cochrane, wife of David Siess, residing in Avoyelles parish, obtained a judgment of separation of property from her husband, owing to the embarrassed condition of his affairs.

From that time to 1896, inclusive, she did business with H. & C. Newman, of New Orleans, commission merchants, receiving advances from them and shipping her cotton to them.

In 1876 she acquired some real estate, partly cash and partly on credit; and for the credit part executed her four notes, each for $170, falling due in one, two, three, and four years, respectively, and bearing 8' per cent. interest from date. To secure same she gave a mortgage on the property. Also the vendor's privilege was reserved.

In December, 1886, she bought, partly cash and partly on credit, other real estate, the same which her vendor had bought from her husband some months before. For the credit part she executed her two notes for $500 each, payable respectively on January 1, 1888 and 1889. To secure the payment of these notes she gave a mortgage on the property. Also the vendor's privilege was reserved.

In 1890, with the authorization of her husband and of the judge, she executed a mortgage in favor of Henry Newman, of the firm of H. & C. Newman, for $2,633.58, for which she gave her notes. Both the certificate of the judge authorizing her and the act of mortgage recite that the mortgage is given for money borrowed by her to be used in paying certain debts secured by mortgage on her property.

In 1897, with the authorization of her husband and of the judge, she executed in favor of the same Henry Newman the mortgage notes upon which the present suit has been brought. In her petition to the judge asking for the authorization she said that Henry Newman holds against her the four mortgage notes of the mortgage of 1890, amounting to $1,825, and also another mortgage note of $1,100, executed by her in favor of H. & C. Newman in 1894; that said notes had been given for her debts, and that she desired to pay same, and for that purpose to execute a new mortgage. The judge's certificate contains the usual recital of his having examined her separate and apart from her husband and ascertained from her answers that the statements of her petition

were true. The mortgage was given for $4,473.54, represented by six notes, to the order of the maker and by her indorsed in blank, for the amounts, and falling due, as follows:

$473.54, due Jan. 1, 1899;

$600, due Jan. 1, 1900;

$800, due Jan. 1, 1901;

$900, due Jan. 1, 1902;

$900, due Jan. 1, 1903;

$800, due Jan. 1, 1904—

all bearing 8 per cent. interest from January 1, 1899.

The defendant paid the first and second of these notes, and paid all of the third except $229.33. She has paid nothing on the others.

The plaintiff, Kohlman, testified that he acquired this partially paid note and the unpaid notes from H. & C. Newman in good faith for valuable consideration. He gives the date of his acquisition, which would show that he acquired the two notes due January 1, 1903 and 1904, before maturity, out the others after maturity.

For answer, defendant pleads the general denial. She specially denies that the notes have ceased to belong to Henry Newman. She avers that they were given in renewal of a mortgage given by her to the said Henry Newman in 1890 for a debt of her husband; that neither of said mortgages was executed by her of her own free will, but through the entreaties and threats of her husband and said Newman.

Defendant testified that the mortgage of 1890 was given for a judgment of $1,100, which a certain firm of Hambro & Sons had obtained against her husband, plus interest, and plus also $711 of interest which said Newman had paid on said judgment, and interest on this interest. What the balance of the mortgage was for, defendant does not say, but she says generally that it was for a debt of her husband.

She testified that the mortgage of 1898, now sued on, was given in renewal of the balance due on the mortgage of 1890, and for a debt of her own of $1,400. She testified further that all these mortgages were given by her by reason of threats made by said Newman and of the entreaties and threats of her husband, and not of her own free will.

Defendant's husband testified that he acted as agent of his wife during the time she dealt with H. & C. Newman, and that she came out with money each year except the last, 1896.

Henry Newman, as a witness for defendant, testified that his firm did business with Mrs. Siess, beginning in 1875 until recently, and during that time occasionally lent money to David Siess individually; that the mortgage of 1890 was given to cover a then existing indebtedness, being a balance due after business dealings of about 15 years. He says that it is impossible for him to furnish the accounts of those years, because the records of his business for that time have been disposed of to junk dealers. That he does not recall that any obligation of David Siess was ever charged to his wife's account. That he made personal loans to David Siess, and still holds his notes for same.

The testimony of defendant that the mortgage of 1890 was given for a judgment against her husband does not harmonize very well with her declaration to the judge that she desired to borrow the money to liberate her property from incumbrances, and with her recital to the same effect in the act of mortgage. Nor does it harmonize with the testimony of her witness Newman that the mortgage was given for a balance due in her business of many years with his firm, and that he does not recall that any debt of her husband was ever charged to her. Again, her statement with reference to the interest which was added to the face amount of the

Hambro & Sons judgment in making up the amount of the mortgage of 1890 does not accord with an agreement offered in evidence by herself, dated March, 1888, reciting that all interest on said judgment up to date has been paid, and that an extension of time is granted for payment of the principal.

The learned judge a quo considered that defendant had proved that the mortgage of 1898 had been given for a debt of the husband, except as to the $1,400, which defendant acknowledged to have been her own debt. He thought, however, that defendant, having been authorized by the judge to execute the notes, was precluded from setting up equities as against a bona fide holder for value before maturity; and he found that one of the notes, that last maturing, had been acquired before due. For the amount of this note he gave plaintiff judgment, and dismissed his suit for the remainder.

We agree with our learned Brother on the two points that the equities are open to defendant as to the notes acquired after maturity, and that they are not as to those acquired before maturity. The defendant, having been authorized by the judge to contract, could bind herself as a feme sole, and therefore she is bound for the note or notes acquired before maturity as a feme sole would be in her place. But a feme sole could set up equities as against a holder who had acquired after maturity; and because defendant is a married woman and can contract as a feme sole is no reason why she should be in a worse position.

The case of Koechlin v. Thontke, 26 La. Ann. 737, to which we are referred by the learned counsel for defendant, in support of their contention that even as against a bona fide holder before maturity a married woman duly authorized by the judge can set up that her mortgage note was given for a debt of her husband, is not in point. The authorization of the judge in that case was informal and illegal on its face; it authorized the giving of a mortgage to secure an already existing debt, which is a thing the act of 1855, now articles 125, 126, and 127, Civ. Code, does not authorize, as has been repeatedly decided. Falconer v. Stapleton, 24 La. Ann. 89; Brooks v. Stewart, 26 La. Ann. 715; Conrad v. Le Blanc, 29 La. Ann. 125; Gibson v. Hitchcock, 37 La. Ann. 212, 333; Berwick v. Frere, 49 La. Ann. 229, 21 South. 692.

Decisions more nearly in point are those where it has been held that the lender of money to a married woman is protected by the certificate of the judge where he has made the loan in good faith believing it to be for the benefit of the wife. Reich v. Rosselin, 26 La. Ann. 418; O'Keefe v. Handy, Shff., 31 La. Ann. 832; Henry v. Gauthreaux, 32 La. Ann. 1107; Saufley v. Joubert, 51 La. Ann. 1048, 25 South. 934; Dougherty v. Ins. Co., 35 La. Ann. 629, and cases there cited.

Cases exactly in point are Miller v. Wisner, 22 La. Ann. 457; Locke v. Lafitte, etc., 28 La. Ann. 232; Taylor v. Boules, 28 La. Ann. 294.

We are not as well satisfied as our learned Brother was upon the facts of the case, especially in view of statements made by counsel on both sides in the course of the argument as to what they could prove if an opportunity were offered. We have therefore concluded to remand the case for trial on the facts.

We will add that, as a matter of course, the nature of a debt is not changed by its renewal, or by the renewal of the evidence of it, or of the securities given to secure it. So that, if the consideration of the mortgage of 1898 was given in renewal of preceding mortgages, the question will have to be whether these preceding mortgages were given for a debt of the husband.

It is therefore ordered, adjudged, and de-

creed that the judgment appealed from be set aside, and that his case be remanded for further trial.

NICHOLLS, J., concurs in the decree.